IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE RESPER,
      Plaintiff,
   v.    *   CIVIL ACTION NO. PJM-12-719

SGT. SIRES, et al.,    *
      Defendant.
                             ***

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the alternative Motion for Summary Judgment filed on behalf of Defendants Colin Ottey, M.D., Greg Flury, P.A., Autumn Durst, R.N. Steven Bray, R.N., Dianna Harvey, L.P.N. and Theresa Brenneman, R.N.'s ("Medical Defendants"). ECF No. 24. Also pending is Correctional Defendant Lieutenant Thomas Sires' Motion to Dismiss, or in the alternative Motion for Summary Judgment. ECF No. 28. Plaintiff has responded. ECF No. 35. Medical Defendants have replied (ECF No. 36) and Plaintiff has filed a surreply. ECF No. 37. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motions filed by Defendants will be granted.

Background

Plaintiff states that on March 19, 2009, when he was transferred from Jessup Correctional Institution ("JCI") to the North Branch Correctional Institution ("NBCI"), Sires confiscated medical devices, specifically knee sleeves, patella supports, ankle supports and insoles. ECF No. 3. Plaintiff states that Sires advised him that the devices were being sent to NBCI's medical unit to be reissued. As a result of being deprived of his prescribed medical devices, he had to, "endure acute sharp and dull pains in [his] feet and knees that travel up the backs of [his] legs, exacerbating the conditions for which an orthopedist and podiatrist prescribed [the medical devices]." *Id*. The devices were not

1

reissued. Plaintiff maintains that the deprivation of the devices caused "significant and continuous degeneration" of his knees and feet, making it difficult for him to walk and extremely painful to attempt exercise. *Id*. As relief, Plaintiff seeks an order that he be examined by a podiatrist and orthopedic specialist to determine the state of his existing condition and proper course of treatment, including issuance of any comparable medical devices. He also seeks compensation for the confiscation and destruction of the medical devices. *Id*.

Lieutenant Thomas Sires is a correctional employee assigned to NBCI. ECF No. 28, Ex. A. Prior to his current assignment as back-up Duty Lieutenant on NBCI's 3-11 shift, he was a Sergeant assigned as the Officer in Charge of NBCI's Property Room. *Id*. Upon arrival at NBCI on March 17, 2009, Plaintiff was a strip-searched. The search uncovered a USB drive sewn into the collar of Plaintiff's state-issued coat. Sires confiscated the USB drive as contraband and wrote an adjustment report charging Plaintiff with its possession. *Id*. Sires avers that he specifically recalls Plaintiff's transfer to NBCI because he has never before or since uncovered a USB drive sewn into clothing. Sires avers that no medical items were taken from Plaintiff and further avers that had such items been confiscated from Plaintiff, a confiscation form would have been completed and Plaintiff would have been required to sign same acknowledging the confiscation. *Id*. Plaintiff's property inventory from JCI demonstrates that 6 unspecified medical items were packed for his transport to NBCI. ECF No. 35, Ex. 23(1).

Sires further avers that the standard intake procedure at NBCI calls for medical staff to be summoned if an inmate arrives with medical items to determine whether the inmate needs the items. Sires states that this is done for the safety of the arriving inmate and the security of the institution. If the medical items are turned over to the medical department, Sires would have the medical employee sign for same. If it was determined that the arriving inmate required the items, they would be issued

2

to the inmate by NBCI medical staff at the completion of the initial medical interview.[1] *Id*. At intake Plaintiff did not appear to be in distress. Had Plaintiff appeared in distress or arrived with an obvious disability, medical staff would have been contacted immediately to determine whether Plaintiff needed medical assistance. *Id*.

Later on March 19, 2009, Plaintiff was issued his allowable personal property brought from JCI. *Id*., and Ex. 2 p. 6-9. The property was inventoried in Plaintiff's presence and he signed it. Confiscation forms were completed showing items which were not allowable. There is no entry on the confiscation form indicating the taking of any medical item. *Id*.

Plaintiff was seen by Nurse Welner and Dr. Ottey for his medical intake interview. *Id*., p. 77-78, 334. There is no indication in those medical reports that Plaintiff required braces, shoe inserts, or any other items complained of in this case. *Id.* The transfer screening specifically noted that Plaintiff did not have any assistive devices and Plaintiff's only immediate medical issue concerned sinus problems. *Id*. Similarly the intra-system transfer summary generated by JCI did not indicate any medical devices prescribed to Plaintiff nor that he suffered from a chronic condition. *Id*., p. 326.

The uncontroverted medical records demonstrate that on March 23, 2009, Plaintiff filed a sick call request regarding refill of various prescriptions as well as the need for knee supports. ECF No. 24, Ex. 1, p. 206 & 326. Plaintiff submitted two other sick call forms on April 2, 2009, which made no mention of the medical devises. *Id*. p. 204 & 205. Plaintiff submitted another sick-call slip on April 26, 2009, stating that his knee and ankle supports as well as medication were sent to the medical department by property personnel for issuance upon his arrival at NBCI and indicating he was in need of the items. *Id*., p. 203.

---

[1] Plaintiff states that his medical devices were packed in his property boxes at JCI. He states that on March 19, 2009, he was escorted to the property room for the inventory of his property. He states that at that time his medical devices were placed into a large brown paper bag and he was advised that the items would be taken to the medical department

3

Plaintiff was examined by Lisa Schindler, P.A. on April 29, 2009. *Id.*, p. 339. It was noted that Plaintiff requested knee braces for patellar tendonitis. Plaintiff was prescribed pain relievers and Schindler requested an x-ray. *Id.*, p. 336. Schindler's notes also reflect that she referred Plaintiff to Dr. Ottey for further evaluation regarding his request for a knee brace (*Id.* p. 339-340) and also noted "knee brace from property to i/m w/ paper work x 1 yr. Thanks." *Id.*, p. 337.

Plaintiff was evaluated by Dr. Ottey on May 2, 2009, after Plaintiff's altercation with another inmate. Plaintiff complained of pain in his left upper abdomen. There was no sign of injury. No other complaints were noted. *Id.* p. 341.

The x-rays ordered by Schindler were not taken until May 19, 2009, and read the following day. The x-rays showed no significant spurs. Small lucencies were noted in the mid-patella on the right as well as bone cysts. *Id.*, p. 211, 336.

Plaintiff was again seen on May 22, 2009, by Schindler and again reported knee pain. *Id.* p. 346. Schindler noted "bilateral knee pain, severity is moderate, worse with use, improved by rest, status is stable." *Id.* She also noted knee pain was "mild pain w/ motion." *Id.*, p. 348. He was prescribed a pain reliever to continue through August 29, 2009. *Id.*

Plaintiff's next sick-call slip complaining of joint pain was filed on June 14, 2009. *Id.*, p. 201. The sick call requested more analgesic medication as well as knee supports and insoles. *Id.*, p. 201. Plaintiff was again evaluated by Schindler. *Id.*, p. 350. Schindler referred Plaintiff to Dr. Ottey for further evaluation of the request for knee brace and insoles. *Id.*

On June 26, 2009, Plaintiff filed another sick call slip stating he needed his nails cut and he needed to see the doctor regarding "wrist, chronic knee and foot pain for 2.5 months." *Id.*, p. 200. It was noted, presumably because Plaintiff had been scheduled to see a health care provider, that

---

so that medical personnel could determine whether same should be reissued to Plaintiff. ECF No. 35

Plaintiff was out to court on July 4, 2009.[2] *Id.*, p. 200. Plaintiff filed another sick call slip on July 14, 2009, again stating he needed his nails cut and needed "knee/patella supports." *Id.*, p. 199. Plaintiff was seen on July 17, 2009, by Nurse Bray regarding his request to have his nails cut and on July 18, 2009 by Greg Flury, P.A. After examination Flury did not find any indication for patellar knee braces. Flury discussed with Plaintiff the possibility of a steroid injection which Plaintiff declined. Flury prescribed daily calf stretches and advised Plaintiff he would refer him to see Dr. Ottey to discuss the need for knee brace and insoles. *Id.*, p. 353.

Plaintiff's next sick call slip relating to medical devices was filed on September 5, 2009. *Id.*, p. 197. Plaintiff was seen by Flury on September 9, 2009. Flury indicated that "exam findings did not support decision for authorizing support, however patient [sic] expressed need for further advanced level of evaluation and assessment." *Id.*, p. 360-361. Plaintiff's analgesic pain reliever was extended through November 27, 2009. Flury again requested that Plaintiff be examined by Dr. Ottey. *Id.*, p. 360.

Plaintiff was examined by Dr. Ottey on September 22, 2009. Ottey noted Plaintiff's subjective complaints of knee pain and that Plaintiff reported that the knees were unstable at times. ECF No. 35, Ex. 39. Making no medical finding, Ottey requested Plaintiff receive his knee support, insoles and ankle support from his property. ECF No. 24, p. 363. On October 6, 2009, Plaintiff submitted a sick-call slip checking on the status of his medical devices. *Id.*, p. 196. On October 16, 2009, Plaintiff received insoles, knee support, and ankle support for one year. *Id.*, p. 72-74.

Plaintiff was again examined by Dr. Ottey on December 26, 2009. Ottey asked solely for braces to be reissued. *Id.*, p. 375. Plaintiff's pain medication was also renewed. *Id.*, Pp. 375. An order was issued on January 19, 2010, authorizing a second neoprene knee sleeve be issued to

---

[2] Plaintiff confirms that he was out of NBCI from July 2 to July 9, 2009, for a court appearance. ECF No. 35.

Plaintiff as well as a pair of firm insoles. *Id*., p. 380-81. The order was reissued on February 16 and April 21, 2010. *Id*., p. 385, 391.

Plaintiff indicates that on February 15, 2010, a meeting was held by medical personnel who determined that Plaintiff's medical devices could not be reissued because they had never been received by the medical property room. ECF No. 35. Plaintiff states he never received braces or supports comparable to those improperly confiscated. *Id*.

Plaintiff has provided a copy of an inmate request dated February 28, 2010, wherein he complained about return of the knee supports, cast insoles, and ankle supports confiscated upon his arrival at NBCI. The Warden responded that the order to return Plaintiff's property was six months after his arrival at NBCI and property is only held for 120 days. The Warden further indicated that Plaintiff received "the same type of equipment from the medical stock room at NBCI." ECF No. 35, Ex. 8(1). Plaintiff disputes that the items issued to him were of the same type. ECF No. 35. In 2011 orders were issued for Plaintiff to receive knee braces with patella support. *Id*., Ex. 31 & 32. He received same on June 9, 2011. *Id.*, Ex. 41.

Plaintiff has provided physician's notes from October 31, 2000, indicating he was diagnosed with patella tendonitis. He was prescribed Motrin and on November 29, 2000, provided two knee braces. *Id*., Ex. 33. Plaintiff has also provided copies of sick call slips from December of 2000, January, March, May, and August of 2001, and January and April 2002, noting a history of patella tendinitis which was at all times reported as "stable." *Id.*, Ex. 34-40. No information has been provided about the need for insoles or other medical devices.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether

7

he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a medical provider linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refutes presence of doctor's subjective knowledge).

In order to state a constitutional claim for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle* 429 U.S. at 106. In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness.

*Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U. S. at 837 (1994). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of a deprivation devolve into an application of the subjective views of the judges deciding the question." *Strickler v. Waters*, 989 F. 2d 1375, 1379–80 (4th Cir. 1993). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Prison officials who are charged with deliberate indifference to a serious medical need must "know of and disregard the objectively serious condition, medical need, or risk of harm." *Shakka v. Smith*, 71 F. 3d 162, 166 (4th Cir. 1995).

In the instant case, Plaintiff complained of joint pain and, in response to his complaint, medical personnel prescribed analgesic pain medication, ordered x-rays, offered steroidal injection which Plaintiff declined, prescribed stretching exercises, and referred Plaintiff to follow-up with a physician who ultimately prescribed braces and inserts for Plaintiff's shoes. No evidence suggests that Plaintiff has suffered any permanent injury as a result of the delay in receiving the medical devices to alleviate some of his joint pain and tendonitis. Objectively viewed, Plaintiff's condition was not sufficiently serious to require emergency medical attention. *See Rish v. Johnson*, 131 F.3d 1092, 1094 (4th Cir. 1997). As the medical records demonstrate, neither Flury nor Schindler believed

any of the medical devices were indicated by Plaintiff's objective presentation of symptoms. The delay involved in providing Plaintiff with medical devices in the instant case does not shock the conscience in light of the fact that the medical condition was not life threatening, nor likely to cause serious harm if not attended to immediately. While the delay did occur, the length of delay is neither alarming nor unusual, even for those who live outside the prison environment.

Plaintiff also cannot establish the subjective component of a deliberate indifference claim. *See Miltier*, 896 F. 2d at 851 (deliberate indifference may be demonstrated by either actual intent or reckless disregard). Plaintiff alleges in his complaint that Sires confiscated his prescribed medical devices. Sires denies doing so. Assuming Sires confiscated the devices, he was entitled to do so consistent with prison protocols concerning the safety of the institution. It was then up to medical personnel to determine whether the devices were necessary and to be provided to Plaintiff. Sires' conduct was the only action he was authorized to take; he is not authorized to deliver medical care. *See Shakka*, 71 F. 3d at 167. Given that nurses and physician's assistants who examined Plaintiff did not believe the medical devices were necessary, it cannot be said that Sires, a correctional officer, knew of and disregarded a risk to Plaintiff's safety.

With respect to the medical defendants, their conduct also does not establish an actual intent or reckless disregard for Plaintiff's medical need. Plaintiff was evaluated in a timely manner by medical providers as to each of his claims. P.A. Flury prescribed pain medication and exercises and although he did not believe Plaintiff required medical devices, he referred Plaintiff to Dr. Ottey for further evaluation. P.A. Schindler ordered pain medication and x-rays and also referred Plaintiff to Ottey for further evaluation. When Plaintiff was examined by Ottey, Ottey requested Plaintiff be provided insoles and braces. That Plaintiff was prescribed a knee brace and insoles some eight years before his transfer to NBCI does not in and of itself demonstrate that Plaintiff continued to need

11

them. Plaintiff's medical records further demonstrate that Nurses Durst, Bray, Harvey and Brenneman did not interact with Plaintiff regarding the complaints raised in this case. *Id*., p. 387, 352, 374, 368, 359, 349. Plaintiff's claim fails to establish that any of the Defendants acted with a sufficiently culpable state of mind, nor has he established the existence of an objectively serious medical condition. His claim for deliberate indifference to a serious medical need is subject to summary judgment and the Defendants' motions for summary judgment will be granted.

Plaintiff's claim that Sires confiscated his medical items in retaliation for Plaintiff having been charged with an inmate rule infraction for trying to bring the unauthorized USB port into NBCI is likewise unavailing. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Plaintiff offers nothing in support of his claim other than self-serving conclusory averments. There is nothing in the record to suggest that Defendants acted in the manner alleged. Moreover, it was up to the medical department to determine whether Plaintiff demonstrated a present need for the medical devices and order or reauthorize same. "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996).

To the extent Plaintiff raises a Due Process claim, his claim fails. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-

deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[3] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4] Even if plaintiff's property were improperly destroyed, such a claim does not rise to a constitutional violation

A separate Order shall be entered in accordance with this Memorandum.

July 11, 2013

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

13